IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FAY ROBERTSON, ) | CV 11-154-M-DWM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| ZIPLOCAL, LP; PHOENIX ) | |
| DISTRIBUTION; MIKE BOWDEN ) | |
| and DOES 3-5, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Fay Robertson brings this action against Defendants Phone Directories Company, Inc. ("ZipLocal"), Phoenix Distribution ("Phoenix"), and Mike Bowden seeking damages for injuries sustained when she tripped and fell over a phone directory left in her driveway. Pending before the Court is ZipLocal's motion for summary judgment. For the reasons stated below, the motion is granted.

**FACTUAL BACKGROUND**

On the evening of September 1, 2007, Robertson arrived home from a

wedding and was asked to wait in the car as her daughter and son-in-law attempted to trigger the driveway lights.  Instead of waiting, Robertson began to walk around the vehicle.  When she was between the front of the car and the rear of another vehicle parked in the driveway, she tripped and fell over a telephone directory.  The directory was published by ZipLocal and had been delivered the day before by a person working for Phoenix, the company that ZipLocal hired to distribute its phone books in Montana.  Robertson suffered a hip fracture in the fall and has experienced complications since.

    ZipLocal hires third-party individuals and companies to distribute its directories.  It uses approximately 10 to 15 distributors nationally, and distribution jobs are awarded on a single-year basis.  Kimball Broderick, the Distribution Manager at ZipLocal in 2007, attested that she would evaluate bids from approximately one to three companies and choose a distributor based on the bidder's price, knowledge of the delivery area, and past performance.  A vendor was deemed to be in good standing if it had previously followed through on past jobs and completed them in a timely manner, elicited no or minimal complaints, invoiced ZipLocal correctly and on time, and showed up to meet the delivery truck on time.  However, these standards were not in written form in 2007.  Nor did ZipLocal have standards or regulations in place regarding whether a distributor

could hire subcontractors to perform the delivery.  ZipLocal has since adopted written standards.

There is no contract in the record between ZipLocal and Phoenix from 2007.  But the parties agree that ZipLocal hired Phoenix to distribute its directories in several areas including Montana, Oregon, and Utah.  When ZipLocal hired Phoenix as the distributor for the Missoula, Montana area, it issued an order form that stated the number of directories to be delivered and the areas where they should be delivered.

Ziplocal did not provide training, dictate the hours worked, or specify how the work was to take place.  Phoenix was paid based on the number of directories it delivered, and it submitted frequent progress reports to ZipLocal by email.  The reports indicated how many books had been received and delivered, what percentage of each job had been completed, and the name of the manager responsible for each job.  If ZipLocal received a complaint about a delivery, it forwarded the complaint to Phoenix.  Phoenix typically replied that it would investigate the complaint, and, in some cases, it reported back on how it responded.

Robertson argues that ZipLocal is subject to liability for her injuries because Phoenix was its agent or because ZipLocal negligently hired, trained, or

supervised Phoenix. ZipLocal counters that it is entitled to judgment as a matter of law on both theories because no material facts are in dispute, Phoenix was an independent contractor, there is no evidence of "control," and the record does not support a theory of negligent hiring, training, or supervision.

## ANALYSIS

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the non-moving party. *Id.* at 252. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment; factual disputes which are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

**A.     Phoenix was not an agent, but an independent contractor.**

The record does not support Robertson's argument that Phoenix acted as ZipLocal's agent. "An individual is an agent of another when that other has the right to control the details, methods, or means of accomplishing the individual's

work." *Butler v. Domin*, 15 P.3d 1189, 1194 (Mont. 2000) (citations omitted). Four factors help determine whether the right of control is sufficient to give rise to an agency relationship: "(1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire." *Id.* (citation omitted). In an agency relationship, the principal is liable for the negligent acts of an agent that is acting within the scope of its agency. Mont. Code Ann. § 28-10-602(1).

In contrast, "[e]mployers are generally not liable for the torts of their independent contractors." *Beckman v. Butte-Silver Bow Co.*, 1 P.3d 348, 350 (Mont. 2000). An independent contractor "renders service in the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually not paid by the job." *Stand. Chem. Mfg. Co. v. Empl. Sec. Div. of Mont. State Dept. of Lab. and Indus.*, 605 P.2d 610, 613 (Mont. 1980) (internal quotation marks and citation omitted); *see also In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997) ("If control may be exercised only as to the result of the work and not the means by which it is accomplished . . . an independent contractor relationship exists.") (construing California law); *Ochoa v. J.B. Martin & Sons Farms, Inc.* ("A principal instructs an independent contractor on "what to do, but not how to do

it.") (construing Arizona law).

There are no facts suggesting that ZipLocal controlled or sought to control the "details, methods, or means" of the directory distribution.  ZipLocal prescribed the results of the work (how many directories should be delivered and where they should be delivered), but it did not specify the means by which Phoenix was to accomplish these goals.  It tracked information pertinent to the results of the work such as the number of directories delivered, the locations where they were delivered, and the percentage of each job that had been completed.  But it did not track, and Phoenix was not required to report on, how Phoenix achieved those results.

ZipLocal also forwarded or sent summaries of customer complaints to Phoenix rather than responding to the complaints itself, and it did not dictate how Phoenix should respond.  Docs. 37-17, 37-18, 37-19.  Phoenix typically replied that it would take care of the complaint or occasionally explained how it had addressed or investigated the complaint.  *Id.*  When ZipLocal made recommendations, Phoenix was not required to follow them.  For example, after receiving a number of complaints within the span of a few days about deliveries in a specific area in Salem, Oregon, ZipLocal emailed Phoenix: "We need to stop all night deliveries.  This is getting out of hand."  Doc. 37-17 at 16.  Apparently

without consequence, Phoenix responded instead that it had fired the "people responsible for these problems." *Id.* In two other instances, ZipLocal instructed Phoenix not to deliver books to people or locations without permission. Doc. 37-18 at 2–3. However, this instruction relates to the results of the work—how many books should be delivered and to whom—rather than the means by which the work should be conducted. The record does not show that ZipLocal controlled the means by which Phoenix performed its deliveries. Rather, Phoenix was responsible for determining how the work was to be performed and for remedying any problems.

    Other factors also indicate that ZipLocal did not have sufficient control over Phoenix's operations to render it liable as a principal. Phoenix hired and fired its own delivery personnel without input from Ziplocal, and there is no evidence that ZipLocal had the right to fire, or instruct Phoenix to fire, those individuals. Nor did ZipLocal control the hours that Phoenix employees worked or provide equipment or other materials besides the phone directories and bags themselves. Lastly, Phoenix was paid according to the number of directories it delivered, not by the hours it worked, and it had distribution contracts with other companies. All these factors, even when considered in the light most favorable to the plaintiff, indicate that Phoenix was an independent contractor, not an agent.


without consequence, Phoenix responded instead that it had fired the "people responsible for these problems." *Id.* In two other instances, ZipLocal instructed Phoenix not to deliver books to people or locations without permission. Doc. 37-18 at 2–3. However, this instruction relates to the results of the work—how many books should be delivered and to whom—rather than the means by which the work should be conducted. The record does not show that ZipLocal controlled the means by which Phoenix performed its deliveries. Rather, Phoenix was responsible for determining how the work was to be performed and for remedying any problems.

    Other factors also indicate that ZipLocal did not have sufficient control over Phoenix's operations to render it liable as a principal. Phoenix hired and fired its own delivery personnel without input from Ziplocal, and there is no evidence that ZipLocal had the right to fire, or instruct Phoenix to fire, those individuals. Nor did ZipLocal control the hours that Phoenix employees worked or provide equipment or other materials besides the phone directories and bags themselves. Lastly, Phoenix was paid according to the number of directories it delivered, not by the hours it worked, and it had distribution contracts with other companies. All these factors, even when considered in the light most favorable to the plaintiff, indicate that Phoenix was an independent contractor, not an agent.

The fact that there is no contract specifying that Phoenix was an independent contractor does not negate the rest of the evidence. In *Kober v. Stewart*, 417 P.2d 476, 479 (Mont. 1966), the Montana Supreme Court noted that the contract between a hospital and radiologist did not specify that the radiologist was an independent contractor. However, the Court also noted several other factors—including that the hospital owned the equipment and space the radiologist used, charged the radiologist's patients for services, and shared the income generated by the radiology department—that contributed to its decision that there was a genuine issue of material fact whether an employer-employee relationship existed. *Id.* The lack of specification or, in this instance, the lack of a contract, does not automatically create a dispute over whether an agency relationship existed.

Finally, any evidence that ZipLocal, since the accident, started providing written instructions to its delivery contractors on where to place directories or exercising more control over how contractors should respond to complaints is irrelevant to this case. The evidence does not establish control prior to or during Phoenix's delivery of the directory to Robertson's residence in 2007, and may only indicate a subsequent remedial measure. Robertson's theory of ostensible agency also fails because there is no evidence that ZipLocal ever held out Phoenix

as its agent.

> **B.  ZipLocal did not exercise control sufficient to render it liable for Phoenix's tortious acts.**

The record does not support Robertson's argument that ZipLocal negligently exercised control over Phoenix's work.  A principal may be liable for the torts of an independent contractor if it "knows or should know that the independent contractor is performing work in an unreasonably dangerous manner, and if the employer retains the authority to direct the manner in which work is to be performed." *Beckman*, 1 P.3d at 355 (citing Restatement (Second) of Torts § 414, cmt. b); *see also Umbs v. Sherrodd, Inc.*, 805 P.2d 519, 521 (Mont. 1991).  A principal can retain such authority by taking control of its independent contractor's actions or by reserving that authority in a contract.  For example, the principal in *Umbs v. Sherrodd, Inc.* ordered its independent contractor to deliver a load using a truck that the principal knew was unsafe.  The principal thus "took control" over the actions of its independent contractor, creating an issue of material fact concerning liability.  *Id.*  In *Beckman*, the principal did not order its independent contractor to engage in an unsafe activity and did not supervise the excavating operations.  1 P.3d at 356.  However, two documents provided that the principal in *Beckman* "[might] provide supervision," would "monitor[] all

construction work," and could set requirements for the "methods of construction." *Id.* There was thus an issue of material fact over whether the principal retained sufficient control to establish liability for its independent contractor's acts. *Id.*

Robertson has presented no evidence from before August 31, 2007, when the directory at issue was delivered, that suggests that ZipLocal knew Phoenix was delivering telephone directories in an "unreasonably dangerous manner." *Beckman*, 1 P.3d at 355. The complaints from customers that are in the record all post-date Robertson's accident. Moreover, the complaints do not indicate that ZipLocal should have foreseen a physical injury from a trip and fall. The emails include complaints about transmission fluid that leaked on a driveway, thrown books that made a "mess," books that got wet in the rain or a puddle, deliveries that were larger than was required, unwanted deliveries, and missed deliveries. The only complaint that could possibly be construed as indicating an "unreasonably dangerous manner" of delivery concerned a book that was thrown at a house and broke off pieces of the vinyl siding.

Even if ZipLocal knew or should have known that Phoenix was performing its contract in an unreasonably dangerous manner, it did not "retain the authority to direct the manner in which work [was] to be performed." *Id.* at 355. Though ZipLocal may have been able to make suggestions, it did not control the operative

details of Phoenix's work. *See* Restatement (Second) of Torts § 414, cmt. c (noting that it is not enough that a principal "has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations"); *Dean v. City of Buffalo*, 579 F. Supp. 2d 391, 400–01 (W.D. N.Y. 2008) (distinguishing between directions by the employer as to the work to be performed by an independent contractor and control over the 'method and means' of the performance of that work).

There is no evidence that ZipLocal supervised or controlled the manner in which Phoenix delivered the phone book to Robertson, or that ZipLocal had ever before asserted such a right, and there is no contract in which ZipLocal reserved such authority. Accordingly, Ziplocal did not assume liability for Phoenix's torts.

    **C.**    **ZipLocal cannot be held liable for allegedly negligently hiring, training, and supervising Phoenix.**

        1.    Negligent hiring

"The basis of responsibility under the doctrine of negligent hiring is the master's own negligence in hiring or retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit and thereby creating an unreasonable risk of harm

to others." *Bruner v. Yellowstone Co.*, 900 P.2d 901, 906 (Mont. 1995) (Leaphart, J., dissenting) (internal quotation marks and citation omitted). The Montana Supreme Court has recognized the tort of negligent hiring applies to independent contractors. *Gurnsey v. Conklin Co., Inc.*, 751 P.2d 151, 157–58 (Mont. 1988)). However, the Court has not analyzed the tort except to adopt the limitation in Restatement (Second) of Torts § 411 that provides that such liability is limited to physical harm. *Id.* at 158.

The Restatement states that an employer is only liable for the incompetence or carelessness of a contractor where a non-negligent employer would have discovered his lack of skill or experience and where physical injury to a third party resulted from those deficiencies. Restatement (Second) of Torts § 411, cmt. b. In contrast, an employer is not liable for harm caused solely by a contractor's inattention or negligence. *Id*. Courts have also found that the amount of care that should be exercised in selecting an independent contractor varies according to the danger and difficulty of the work that is to be done. *Id.*; Restatement (Second) of Torts § 411, cmt. c.

Robertson insists that ZipLocal "made no inquiry into whether Phoenix Distribution was competent to facilitate" delivery of its telephone books. Doc. 36 at 15. However, the evidence in the record does not support this assertion. When

hiring a vendor for a particular job, ZipLocal considered bidders' prices as well as their knowledge of the delivery area and past performance. Doc. 37-2 at 2–3. Phoenix was considered a vendor in good standing, meaning it was deemed to have completed jobs in a timely manner, invoiced ZipLocal correctly and on time, obtained the required equipment prior to delivery, and completed its jobs with "no or minimal complaints." Depo. Suster, doc. 38-1 at 3–4. Given that Phoenix had completed past jobs with "no or minimal" complaints, there is no evidence that ZipLocal knew or should have known that Phoenix lacked skill or experience when it hired Phoenix to deliver books to the Missoula, Montana area. Additionally, the record contains no complaints from the time period preceding the accident much less from the time period before ZipLocal hired Phoenix. Thus Robertson has cited no evidence that indicates that ZipLocal should have known that Phoenix might be careless or incompetent and or that hiring or retaining Phoenix posed an unreasonable risk of harm to others.

    2.    Negligent supervision and training

The Montana Supreme Court has not decided a negligent supervision case involving an independent contractor. However, other courts have limited such claims to situations where the employer has reserved the right, or has a duty, to supervise the independent contractor's work. *E.g. Gus & Jacks Tire Shop v.*

*Reznor*, 8 Fed. Appx. 696, 700 (9th Cir. 2001) (unpublished) (construing Montana law); *Robinson v. Govt. of Malaysia*, 269 F.3d 133, 145 (2d Cir. 2001) (applying New York law); *Jordan v. NUCOR Corp.*, 295 F.3d 828, 835 (8th Cir. 1999) (applying Nebraska law); *Dean*, 579 F. Supp. 2d at 401 (finding no supervision where an employer directed work that was to be done but did not control the method and means of the work's performance); *Castro v. Serrata*, 145 F. Supp. 2d 829, 831 (S.D. Tex. 2000) ("To be liable for negligent supervision, the employer's role must be more than a general right to order the work to start or stop, to inspect progress, or receive reports."). Other courts have held that a plaintiff can establish a claim for negligent training or supervision if she establishes that the principal "knew or should have known of the necessity and opportunity for exercising such control." *E.g. Otani v. City & County of Haw.*, 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998) *aff'd sub nom. Otani v. Hawai'i Co. Police Dept.*, 246 F.3d 675 (9th Cir. 2000) (citation omitted) (applying Hawaii law). Under either standard, ZipLocal prevails. As discussed above, there is no evidence that ZipLocal reserved the right to supervise or control Phoenix's work or that it exercised such control or supervision. Nor is there evidence that Mike Bowden or Phoenix Distribution needed supervision or training in their supervision or training of their distributors or that the work was so dangerous or complex as to necessitate such

-14-

supervision. Accordingly, Robertson's claims for negligent training and supervision also fail.

## CONCLUSION

Based on the foregoing, ZipLocal is entitled to summary judgment on each of Robertson's claims.

IT IS HEREBY ORDERED that ZipLocal's Motion for Summary Judgment (doc. 8) is GRANTED. All claims against Defendant ZipLocal, LP are DISMISSED.

Dated this 26th day of September 2012.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT